# Exhibit B

***EFILED***
Case Number 2020L 001546
Date: 11/2/2020 3:51 PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT OF MADISON COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| STATE OF ILLINOIS *ex rel.* ZEB MILLER, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN NATIONAL INSURANCE COMPANY; STANDARD LIFE & ACCIDENT INSURANCE CO..; AMERICAN NATIONAL LIFE INSURANCE COMPANY OF TEXAS; and GARDEN STATE LIFE INSURANCE CO., <br><br> Defendants. | FILED UNDER SEAL AND *IN CAMERA* PURSUANT TO 740 IL. COMP. STAT. § 175/4(b)(2) <br><br> 2020L 001546 <br><br> Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff/Relator Zeb Miller states the following complaint on behalf of the State of Illinois against Defendants.

## INTRODUCTION

1. Plaintiff brings this action under the Illinois False Claims Act, 740 Ill. Comp. Stat. §§ 175/1 through 175/8 ("IFCA"), to recover damages and penalties for Defendants' scheme to defraud the State of Illinois of millions of premium tax revenue Defendants owe to the state. Specifically, Defendants—an affiliated group of insurance companies—have for over 10 years failed to report or pay to the State of Illinois substantial amounts of premium taxes due on insurance policies written for Illinois residents. They failed to do so despite collecting a "premium tax" from their insured as part of the gross premiums. Instead of remitting the collected "premium tax" to the State of Illinois, Defendants pocketed the money, defrauding both their insureds and the state. Therefore, Plaintiff/Relator—a former employee of one of the Defendants with personal knowledge of this scheme—now brings this action under the IFCA on

1

behalf of the State of Illinois to recover the maximum amount of damages and penalties afforded under the act.

## PARTIES JURISDICTION AND VENUE

2.  Plaintiff/Relator Miller is a citizen of the United States residing in Dickinson, Texas, and a former employee of Defendant American National Insurance Company ("American National").

3.  Defendant American National is an insurance company domiciled in Texas, with its principal place of business in Galveston, Texas.

4.  Defendant Standard Life & Accident Insurance Company ("Standard Life") is an insurance company domiciled in Texas, with its principal place of business in Galveston, Texas. Standard Life is a wholly owned subsidiary of American National.

5.  Defendant American National Life Insurance Company of Texas ("AN Texas") is an insurance company domiciled in Texas, with its principal place of business in Galveston, Texas. AN Texas is a wholly owned subsidiary of American National.

6.  Defendant Garden State Life Insurance Company ("Garden State") is an insurance company domiciled in Texas, with its principal place of business in Galveston, Texas. Garden State is a wholly owned subsidiary of American National.

7.  This Court has jurisdiction over Defendants pursuant to the Illinois Long-Arm Statute, 735 Ill. Comp. Stat. § 5/2-209, because they have and continue to transact business within the State of Illinois, and the allegations herein arise from their business transactions in Illinois.

8.  Venue lies in this forum under 735 Ill. Comp. Stat. § 5/2-101.

## FACTUAL ALLEGATIONS

9. For over 10 years, Defendant American National has—both directly and through its Defendant subsidiaries described above—provided what is known as stop-loss insurance to businesses within Illinois. Stop-loss insurance is insurance provided to employers who maintain self-funded health benefit losses. Under a stop-loss policy, the insurer agrees to reimburse the employer for large expenses over a certain amount. The policy is purchased to limit the employer's liability.

10. Defendants procured the stop-loss policies at issue through what are known as managing general underwriters ("MGU"). An MGU is a specialized type of insurance agent to which an insurance company grants underwriting authority. MGUs typically have authority to, among other things, administer the insurance program, negotiate insurance contracts, and settle claims. Because Defendants procured and administered their stop-loss policies through MGUs, they referred to this particular line of business as their MGU business.

11. Under Illinois law, Defendants, as writers of stop-loss health insurance policies in Illinois, were and are obligated to pay an annual privilege tax. Illinois law provides that for healthcare policies written for risks in Illinois, insurance companies are required to pay an annual privilege tax equal to 0.5% of the taxable net premium. 215 ILCS § 5/409. This percentage, however, is adjusted under Illinois' retaliatory tax provision, which provides that when the state of a foreign insurance company requires Illinois-domiciled insurance companies to pay taxes, penalties, fees, or charges greater than those charged by Illinois to companies domiciled in the foreign state, the foreign insurance company is charged a premium tax at the higher rate of their state on a retaliatory basis. 215 ILCS §§ 5/444 and 5/444.1.

3

12. Under Texas law, authorized health insurers that issue policies on lives insured in Texas are required to pay a premium tax of 1.75 percent of the annual taxable gross premiums received. *See* Tex. Ins. Code §§ 222.002 and 222.003. For unauthorized insurers or policies, Texas imposes a premium tax of 4.85 percent of the annual gross premiums charged by the insurer. Tex. Ins. Code § 226.003.

13. For over a decade, Defendants' MGU business line has issued authorized and, upon information and belief, unauthorized stop-loss health insurance policies for Illinois companies and citizens. Therefore, under Illinois' retaliatory tax, Defendants were required to pay a 1.75 percent premium tax on their authorized policies and a 4.85 percent tax on their unauthorized policies.

14. Despite owing these premium taxes, Defendants have failed to report their premiums received and failed to pay the required premium tax. While this is a fraudulent practice in and of itself, for over a decade, Defendants have actually collected the estimated premium tax from their Illinois insured as a "premium tax." Rather than remit the premium tax to the State of Illinois, Defendants have pocketed the premium taxes collected, thereby defrauding both the State of Illinois and Defendants' insured.

15. The fraudulent practice of collecting purported premium taxes is documented in several reports collected by Plaintiff/Relator. For example, the reports show that in May 2019 Defendant Garden State wrote a stop-loss health insurance policy to a company in Rockford, Illinois called Mechanical Tool & Engineering. The company paid a gross premium of $35,637.57. This gross amount included a line item of $1,069.12 for a "premium tax." Despite billing for and receiving this premium tax, Defendants retained the amount without reporting or remitting it to the State of Illinois.

16. The reports also show that in February of 2015, Defendant AN Texas issued a stop-loss health policy to a company located in Herrin, Illinois called Southern Orthopaedic Associates. The company was charged a gross premium of $22,117.82. This gross amount included a line item of $552.95 for a "premium tax." Despite billing for and receiving this premium tax, Defendants retained the amount without reporting or remitting it to the State of Illinois.

17. The reports also show that in January of 2015, Defendant AN Texas issued a stop-loss health policy to a company in Chicago, Illinois named the Chicago Blower Company. The company was charged a gross premium of $22,016.61. This gross amount included a line item of $550.41 for a "premium tax." Despite billing for and receiving this premium tax, Defendants retained the amount without reporting or remitting it to the State of Illinois.

18. These are just a few of the thousands of instances where Defendants collected a "premium tax" from its Illinois insured, only to pocket the money without remitting it to the State of Illinois. Plaintiff estimates that the total amount of such premiums that Defendants collected from Illinois insureds but did not report or pay exceeds $5,000,000.

19. Plaintiff was the Director of MGU Operations and Lead Underwriter for the MGU line of business that wrote the policies at issue. When Plaintiff discovered that Defendants were routinely collecting the above described "premium tax" from their clients but not remitting said amounts to state governments, including the State of Illinois, Plaintiff raised the issue with a senior executive in charge of the MGU business. The executive acknowledged the practice and told Plaintiff that it was a problem. Despite acknowledging the problem, Defendants did nothing to change this fraudulent practice.

20. The very fact that Defendants billed its insured for the premium taxes and collected them proves that Defendants knew they were obligated to pay the taxes, but knowingly chose not to. Additionally, the supreme court of at least one state, with similar premium tax laws to those in Illinois, has held that Defendants are obligated to pay premium taxes on their stop-loss health policies. *See American Nat. Life Ins. Co. of Tex. V. Director of Revenue,* 269 S.W.3d 19 (Mo. 2008) (holding that stop-loss policies written for employers maintaining self-funded health plans were subject to Missouri's direct premium tax under RSMo § 148.340). Despite this unambiguous authority, Defendants have knowingly failed to report or pay premium taxes to the State of Illinois.

21. In failing to pay the above-described premium taxes, Defendants made material misrepresentations to the State of Illinois. For example, for every year Defendants collected but failed to pay the required premium tax, they submitted to Illinois a form entitled "Privilege and Retaliatory Tax Return for Life and Accident and Health Companies," wherein they were required to report, among other things, the annual premiums collected for accident and health insurance policies written in Illinois. For each of these years, Defendants knowingly failed to report the premiums collected on the Illinois stop-loss health policies. Each of these forms was signed by a corporate officer who falsely declared under penalty of perjury that the return and accompanying schedules were true, correct, and complete.

## CLAIM FOR RELIEF

### Count I: Violation of the Illinois False Claims Act

22. Plaintiff/Relator incorporates the above allegations as if fully set forth in this paragraph.

23. Based on the acts described above, in violation of 740 Ill. Comp. Stat. § 175/3(a), Defendants knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Illinois.

24. The false and fraudulent record and statements that Defendants made or caused others to make were material, as they had a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

25. By reason of these false or fraudulent records and statements, the State of Illinois has been damaged in a substantial amount to be determined at trial and is thus entitled to recover treble damages plus a civil monetary penalty for each false record or statement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff/Relator demands judgment against the Defendants as follows:

(1) Treble the State of Illinois' damages, in amount to be established at trial;

(2) The maximum per-violation penalty allowed under the IFCA;

(3) Plaintiff's reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims and issues so triable.

Dated: November 2, 2020

        Respectfully Submitted,

        ELIAS LLC

        */s/ Richard M. Elias*
        Richard M. Elias (Ill. Bar. No. 6279078)
        231 S. Bemiston Ave, Suite 800
        St. Louis, MO 63105
        P: (314) 391-6820
        relias@eliasllc.com